Filed 3/20/26  P. v. Watson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085363 |
| Plaintiff and Respondent, | (Super. Ct. No. SCE416888) |
| v. | |
| DAVID JACK WATSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

Dan E. Chambers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

David Jack Watson appeals the trial court's order setting the amount of restitution he owed to his victims. He asserts the trial court lacked jurisdiction to issue the order because his probationary period had expired. On the record before us, we disagree the trial court lacked jurisdiction and affirm.

## BACKGROUND

Watson stole a Porsche race car that was loaded on a vehicle hauler trailer. He damaged both and hit another car in the process. The Porsche and the other car belonged to T.G. and the vehicle trailer to D.Q. The damaged Porsche and vehicle trailer were eventually recovered and returned to the victims.

On May 22, 2023, Watson pled guilty to one count of unlawful taking and driving of a vehicle valued greater than $950 (Veh. Code, § 10851, subd. (a)). As part of the plea deal, the District Attorney dismissed the second Vehicle Code section 10851, subdivision (a) count, and allegations of nine prior felony convictions which made Watson ineligible for probation (Pen. Code,[1] § 1203, subd. (e)(4)), and one of which qualified as a strike prior (§§ 667, subds. (b)–(i), 1170.12, and 668).

At the sentencing hearing on July 5, 2023, Watson was placed on formal probation for two years. His probation was to expire on July 4, 2025. He was ordered to pay victim restitution to T.G. and D.Q. "in an amount to be determined" when the victims submitted claims. (Capitalization omitted.)

---

[1]     Further undesignated statutory references are to the Penal Code.

On July 16 and July 17, 2023, the victims provided "Restitution Request Packet[s]" to the District Attorney's office which set forth their loss claims. On or about July 25, the District Attorney filed a request for victim restitution, and a restitution hearing was calendared for August 24, 2023.

Also calendared for August 24, 2023 was a motion by Watson to withdraw his plea.

But neither the restitution hearing nor Watson's motion to withdraw his plea proceeded on August 24, 2023, because Watson was in custody on a new felony case, SCD300243. Instead, the trial court summarily revoked Watson's probation and set an order to show cause (OSC) for August 28, 2023.

On August 28, 2023, Watson's motion to withdraw his plea was taken off calendar and the OSC continued to August 29 to trail the new felony case. His probation would remain summarily revoked until October 27, 2023, when it was formally revoked by the trial court after finding him in violation of probation.

On January 11, 2024, the trial court (Judge Dwayne K. Moring) held a sentencing after revocation (SAR) hearing. The court imposed an executed suspended sentence (ESS) of 8 months (one-third the middle term of two years on the Vehicle Code section 10851, subd. (a) charge), consecutive to the ESS of 3 years state prison upon his guilty plea in the new felony case, and reinstated probation. The court also ordered the length of Watson's probation extended but, for some unknown reason, stated probation would expire on June 2, 2024. This, of course, did not extend probation. Rather, the court's order shortened the original two-year probationary period that was to expire on July 4, 2025, to only an 11-month probationary period.

Specifically, the trial court stated: "[P]robation is reinstated under the following terms: *the length is extended* – well, let me say that I'm going to sentence him consecutively for a third of the midterm of eight months. The execution of that sentence will be suspended *for a two year period*. So it's eight months consecutive to the principal term. *The probationary length is extended* to expire on June 2nd, 2024." (Italics added.)

Watson's counsel apparently caught the trial court's mistake and sought clarification of the court: "Your honor, I'm sorry. You said that probation . . . was to go two years and that it is to expire in June 2024. Is it going to be done in 2024, or two years to go with the new case?" The court responded, "2024," and defense counsel left it at, "Very well." There was no comment from the prosecutor.

The next month, in February 2024, the District Attorney requested a restitution hearing and calendared it for March 25, 2024. But it was taken off calendar on that date because Watson did not appear.

On June 10, 2024, the District Attorney calendared a restitution hearing for July 15, 2024. Watson was not present but appeared through defense counsel pursuant to a section 977 waiver, and the restitution hearing was continued to August 16, 2024.

On August 16, 2024, Watson failed to appear for the restitution hearing, and it was continued to September 6, 2024. On September 6, Watson again failed to appear, his attorney reported he had no contact with Watson, and the court issued and held a bench warrant for Watson.

Watson then "came in" and calendared the restitution hearing for September 13, 2024. On that date, the trial court set the restitution hearing for October 4, 2024. The hearing would be continued several more times, during which the court (Judge Daniel G. Lamborn) expressed concerns it no

4

longer had jurisdiction to order restitution because it believed probation had expired June 2, 2024. The parties filed points and authorities on the jurisdictional question. The court considered their briefs at the restitution hearing ultimately held on December 20, 2024.

On December 20, 2024, Judge Lamborn reviewed the chronology of events as we have described them and noted the case had "taken some strange twists and turns." In particular, the court noted that, on January 11, 2024, Judge Moring purported to extend probation to June 2, 2024, but that was "a bizarre happening because probation initially was set to expire July of 2025." The court also observed "that's a bizarre finding because you usually don't reduce probation when somebody's been in violation of probation." However, the court believed this was a "mistake," understandably made during "fast calendars," because rather than extending probation Judge Moring reduced it to an "11-month probationary period."

Reviewing the timeline of events, however, the trial court found the District Attorney did not "sit on" pursuing victim restitution. It found instead that there were "a bunch of weird twists and turns [that] happened, where both the victim and the [District Attorney's] Office were calendaring restitution requests along the way, and then it ended up where probation was reduced from a two-year period to an 11-month period. And they continued to file the motions, and things didn't happen."

Given these unique circumstances, the trial court found it had jurisdiction to set the amount of restitution for the victims, pursuant to *People v. McCune* (2024) 16 Cal.5th 980 (*McCune*) and section 1202.46. Over defense objection, the court ordered Watson to pay $14,555.49 in victim restitution to T.G. and $630.15 in victim restitution to D.Q., based on the proof of loss presented at the hearing.

DISCUSSION

On appeal, Watson contends the trial court did not have jurisdiction to make the victim restitution order because his probationary period had expired. We disagree.

The California Constitution provides that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) A trial court must order victim restitution "in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (*Id.*, subd. (b)(13)(B); *People v. Giordano* (2007) 42 Cal.4th 644, 652.) To implement this constitutional mandate, the Legislature has enacted a restitution scheme codified primarily in sections 1202.4 through 1202.46. (*Giordano*, at pp. 651–653.) We review de novo whether the trial court exceeded the limits of its jurisdiction set by the statutory scheme. (*People v. Zuniga* (2022) 79 Cal.App.5th 870, 874.)

In any case in which a victim suffers economic loss, the sentencing court "shall require that the defendant make restitution to the victim . . . in an amount established by court order." (§ 1202.4, subds. (f) & (a)(3)B).) If the court cannot ascertain the amount of a victim's losses when it imposes sentence or orders probation, it must include in its restitution order "a provision that the amount shall be determined at the direction of the court." (*Id.*, subd. (f).) In such a case, "the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined." (§ 1202.46.)

In *McCune*, the California Supreme Court interpreted sections 1202.4 and 1202.46 to address the scope of the "trial court's jurisdiction under section 1202.46 to specify the amount of victim restitution following the

6

termination of probation when the defendant had initially been ordered to pay victim restitution in an amount to be determined." (*McCune*, *supra*, 16 Cal.5th at p. 998.) There, the defendant crashed a vehicle head-on into a tree while driving without a license. After helping his injured passenger exit the vehicle, he fled the scene. (*Id.* at p. 986.) At sentencing, the defendant was placed on five years of probation with the condition that he pay victim restitution in an amount to be determined. (*Ibid.*) But because of new legislation, his probationary term was unexpectedly reduced and terminated before the amount of victim restitution was set. The district attorney moved for a restitution hearing one week later and, over defense objection, the trial court concluded it still had authority, under sections 1202.4 and 1202.46, to set the amount after his probationary term expired. (*Ibid.*)

The Court of Appeal affirmed the restitution order in *McCune*, reasoning that section 1202.46 provided "clear instructions" that the "sentencing court retains jurisdiction to fix the amount of restitution until the amount of the victim's losses can be determined." (*McCune*, *supra*, 16 Cal.5th at p. 986.) Our Supreme Court agreed, holding "[t]here is no statutory conflict here that would justify reading an implicit time limit into a court's power to fill in a missing amount once the victim's losses can be ascertained and thus ensure the victim receives full restitution," as required by section 1202.4. (*McCune*, at p. 996.) Thus, because the trial court was not imposing an entirely new restitution order, and because the defendant did not claim any "unfair surprise," our high court concluded the trial court had jurisdiction under sections 1202.4 and 1202.46 to set the amount of victim restitution, even though the defendant's probationary term had expired. (*McCune*, at p. 1001; *id.* at pp. 997–998, 1000.)

7

We reach the same result here. At the time of Watson's sentencing on July 5, 2023, the amount of the victims' losses was not capable of being ascertained, contrary to Watson's assertion it was. In June 2023, the Probation Department mailed the "standard victim letter" to T.G. and D.Q. to advise them of the sentencing hearing and to determine if they had any losses. On June 10, T.G. informed the probation officer that his Porsche and other vehicle were damaged, but he had yet filed any claims nor obtained an estimate for the cost of repairs. The probation officer left a voicemail for D.Q. to obtain information on his losses but D.Q. had not responded by the time the probation officer submitted his report to the court for sentencing.

Thus, because the trial court could not ascertain the amount of the victims' losses when it placed Watson on probation, it was required to order restitution with "a provision that the amount shall be determined at the direction of the court." (§ 1202.4, subd. (f).) And when the court reserves jurisdiction over restitution under section 1202.4, "the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution *until such time as the losses may be determined*." (§ 1202.46, italics added.)

Here, Watson contends because the amount of the victims' losses was included in the July 2023 packet sent to the District Attorney, "[t]he amount of victim restitution was known . . . nearly a year prior to the expiration of [his] probation term on June 2, 2024," and thus the trial court was required to determine the amount of victim restitution before June 2, 2024. Consequently, he argues, the court no longer had jurisdiction when it ordered restitution on December 20, 2024.

Watson's argument rests on an incomplete view of the record. The District Attorney filed a request for a restitution hearing on July 25, 2023—

8

less than 10 calendar days after it received the victims' restitution packets on July 16 and 17—and a restitution hearing was calendared for August 24, 2023.  But the restitution hearing did not proceed on August 24 because Watson was arrested on a new felony case.  As a result, the new felony case took primacy, the probation revocation proceedings trailed, and the restitution hearing was taken off calendar.  His probation was then formally revoked on October 27, 2023, and, on January 11, 2024, the court at the SAR hearing sentenced him to an ESS of 8 months.  It also mistakenly shortened his two-year probationary period to 11 months when it clearly intended to lengthen and extend his probation.

Although the prosecutor did not catch the trial court's error in shortening probation at the SAR hearing, the District Attorney requested another restitution hearing in February 2024, and one was calendared for March 25, *well before the shortened expiration date of June 2, 2024*.  But this restitution hearing also did not proceed because Watson did not appear.  He failed to appear twice for the continued hearing dates and did not come in until after a bench warrant was issued and held for him on September 6.  On that date, with Watson's consent, the restitution hearing was continued and ultimately held on December 20, 2024.

On this record, we reject Watson's timeliness argument.  Like *McCune*, where the defendant's probationary term was shortened by new legislation, Watson's probationary term was unexpectedly shortened by a court error.  But unlike *McCune*, the District Attorney here requested a restitution hearing on multiple occasions before the shortened probationary term ended.  Under these circumstances, we have no "concerns about unfair surprise as a result of protracted or unwarranted delays" where the prosecution "promptly moved for a restitution hearing" (*McCune*, *supra*, 16 Cal.5th at p. 1001; see

9

*id.* at p. 986) before the shortened probationary term ended, and particularly where the delays in determining the victims' losses were caused by the defendant's own actions. Further, the concern expressed in *McCune* that "if a court has the power to set an amount of restitution even after probation has expired, the result may be to 'tether probationers to the criminal justice system indefinitely' " (*McCune*, at p. 1000) is not implicated here. Under these unique circumstances, allowing Watson to avoid his constitutional obligation to make restitution would result in an inequity for his victims.

In sum, we conclude the trial court had jurisdiction under sections 1202.4 and 1202.46 to set the full amount of victim restitution on December 20, 2024.

## DISPOSITION

The order is affirmed.


DO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.